**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SELLERS INGRAM, | Civil No. 10-1375 (NLH) |
| Plaintiffs, |  |
|  | **OPINION** |
| v. |  |
| ATLANTIC COUNTY JUSTICE FAC. |  |
| Defendant. |  |

**APPEARANCES**:

    SELLERS INGRAM, #01-181075, Plaintiff Pro Se
    New Jersey State Prison
    P.O. Box 861
    Trenton, NJ  08625

**HILLMAN**, District Judge:

Sellers Ingram, a prisoner who was formerly incarcerated at Atlantic County Justice Facility ("ACJF"), filed a Complaint without prepayment of the filing fee.[1]  See 28 U.S.C. § 1915(a). This Court dismissed the federal claims and declined to exercise supplemental jurisdiction, but granted leave to file an amended complaint.  Plaintiff timely filed an Amended Complaint under 42 U.S.C. § 1983 against Joseph Bondinsky, Warden of ACJF.  This Court will dismiss the Amended Complaint without prejudice to the filing of a final amended complaint.

---

[1] Plaintiff is presently incarcerated at New Jersey State Prison.  See N.J. Dept. of Corrections, Inmate Locator, https://www6.state.nj.us/DOC_Inmate/details?x=1023993&n=0 (July 26, 2010).

## I. BACKGROUND

The sole defendant in the original Complaint was ACJF, which this Court construed as the County of Atlantic County. This Court dismissed the Complaint because Plaintiff did not allege facts showing that a custom or policy of Atlantic County caused violation of his constitutional rights. See Monell v. Dept. of Social Services of City of New York, 436 U.S. 658, 694 (1978); McTernan c. City of York, Pa., 564 F. 3d 636, 658 (3d Cir. 2009).

The Amended Complaint names the Warden of ACJF. Plaintiff asserts the following facts:

> Three points are presented in this amended complaint: (1) law library access by design of Administrator A.C.J.F. falls below standard of N.J. State law 10A:31-15.1 N.J. Administrative code; (2) Menu falls below standard outlined 10:31-10.1 and 10.3 and 10.5 serving meals and 10.12(b) budgeting purchase; (3) sanitation standard pursuant to 10:31-11.3 N.J.A.C. is not in effect at A.C.J.F., if schedules and checklist are provided they are erroneous/fictitious documents.
>
> Facts in support of points, supra
>
> (1) A.C.J.F.'s legal access is fill out request form for legal reference material with social worker "untrained in law" who forwards to another civilian employee with the moniker "Westlaw" who is also "untrained in law" but finds material on Website. Rendering criminal defendant helpless against the time constraints of adjudication process to provide effective defense or to know how to assess whether court appointed attorney has provided effective defense. Defendant does not bare burden of knowing state laws without legal access to full scope of

>criminal process which runs the gambit of
>N.J. Statutes Annotated 2C section, N.J.
>Rules Governing Court, N.J. Rules of
>Evidence, N.J. Super, N.J. Reports at the
>bare minimum.  There is no one in the
>facility to instruct an inmate on this
>terrai[]n.  Also defendant (Administrator)
>has used outdated rule to misappropriate
>funds pursuant to 10A:31-6.13 N.J.A.C..
>Inmates are charged [$].75 per page for
>copies . . . .  Clear abdication of law by
>Administrator (Joseph Bondinsky) and
>appointed personal accounting (fiscal).  Who
>has the money?  Has a crime taken place?
>When will said money be reimbursed? How long
>and how many have been victimized?  Court
>access is mandated by the United States
>Constitution . . .
>
>(2) Menu is not calorie constructed by
>standards of National Academy of Sciences
>with recommended daily allowance.  Pursuant
>to 3 points, supra.  See 10A:31-10.3(d)
>special diets not receiving supplement of
>equal nutritional value.  How can I an inmate
>prove this to you in a complaint void of the
>court mandating evaluation.  Question inmates
>at large.
>
>(3) Sanitation inspection doesn't exist in
>A.C.J.F..  I concede first and state daily
>cleaning supplies provided.  No inspection
>follows.  There is 5 year old fungus on
>shower walls.  I have never seen them
>inspected.  A correction officer taking count
>does not possess the scientific knowledge for
>inspecting standards of federal, state and
>local safety & health codes.

(Dkt. 6 at 4-7.)

For violation of his constitutional rights, Plaintiff seeks injunctive relief and one million dollars in damages. (Dkt 6 at 8.)

## II.   STANDARD FOR DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a District Court to screen a complaint in a civil action in which a plaintiff is proceeding in forma pauperis or a prisoner is seeking redress against a government employee or entity, and to sua sponte dismiss any claim if the Court determines that it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. §§ 1915(e)(2)(B), 1915A.

Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), hammered the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] which was previously applied to determine if a federal complaint stated a claim.  See Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. 2009).  The pleading standard under Rule 8 was refined by the United States Supreme Court in Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), where the Supreme Court clarified as follows:

---

[2]  The Conley court held that a district court was permitted to dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. at 45-46.

4

> Two working principles underlie our decision in Twombly. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice . . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Iqbal, 129 S. Ct. at 1949 -1950 (citations omitted).

Since Iqbal, the Third Circuit has required district courts to conduct a three-part analysis when reviewing a complaint for dismissal for failure to state a claim:

5

> To determine the sufficiency of a complaint under the [Iqbal] pleading regime . . . , a court must take three steps:  First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Iqbal, 129 S. Ct. at 1947.  Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950.  Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id.

Santiago v. Warminster Tp., 629 F. 3d 121, 130 (3d Cir. 2010) (footnote omitted).

The Court is mindful that the sufficiency of this pro se pleading must be construed liberally in favor of the plaintiff. See Erickson v. Pardus, 551 U.S. 89 (2007).  This Court applies this standard even after Iqbal.

### III.  DISCUSSION

A court's initial task is to "tak[e] note of the elements [Plaintiff] must plead" in order to state a claim of liability under 42 U.S.C. § 1983.  See Iqbal, 129 S Ct. at 1947-48. Section 1983 of Title 28 of the United States Code provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law,

6

>       suit in equity, or other proper proceeding
>       for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

A.  Conditions of Confinement

In the Amended Complaint, Plaintiff asserts that sanitation at ACJF is inadequate, with "5 year old fungus on shower walls," Plaintiff has never seen an inspection by local or state inspectors, and the "menu is not calorie constructed by standards of National Academy of Sciences with Recommended Daily Allowance." (Dkt. 6 at 6, 7.) This Court presumes that Plaintiff was confined at ACJF as a pretrial detainee and construes the Amended Complaint as attempting to assert a conditions of confinement claim under the Due Process Clause of the Fourteenth Amendment.[3]

---

[3] "[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law. Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Bell v. Wolfish, 441 U.S. 520, 537, n.16 (1979) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72, n.40 (1977)); see also City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244
(continued...)

The Due Process Clause of the Fourteenth Amendment prohibits punishment of a pretrial detainee prior to an adjudication of guilt in accordance with due process of law.  See Bell v. Wolfish, 441 U.S. 520, 535 (1979); Hubbard v. Taylor, 399 F.3d 150, 166 (3d Cir. 2005).  As the Supreme Court explained,

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees.

Bell, 441 U.S. at 539 (footnote and citation omitted).

The maintenance of security, internal order, and discipline are essential goals which at times require "limitation or retraction of . . . retained constitutional rights."  Bell, 411 U.S. at 546.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  Id. at 540.  The Fourteenth Amendment standard of unconstitutional punishment, like the Eighth Amendment's cruel

---

³(...continued)
(1983).

8

and unusual punishments standard, contains both an objective component and a subjective component:

> Unconstitutional punishment typically includes both objective and subjective components.  As the Supreme Court explained in Wilson v. Seiter, 501 U.S. 294 . . . (1991), the objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" Id. at 298 . . . .  The Supreme Court did not abandon this bipartite analysis in Bell, but rather allowed for an inference of mens rea where the restriction is arbitrary or purposeless, or where the restriction is excessive, even if it would accomplish a legitimate governmental objective.

Stevenson v. Carroll, 495 F. 3d 62, 68 (3d Cir. 2007).

Under the Due Process Clause, prison officials must satisfy inmates' "basic human needs - e.g., food, clothing, shelter, medical care, and reasonable safety."  Helling v. McKinney, 509 U.S. 25, 32 (1993).  To satisfy the objective component of a conditions of confinement claim, a detainee must show that he was subjected to genuine privation and hardship over an extended period of time.  See Bell, 441 U.S. at 542 (confining pretrial detainees "in such a manner as to cause them to endure genuine privations and hardship over an extended period of time might raise serious questions under the Due Process Clause as to whether those conditions amounted to punishment").  With respect to diet, the Constitution requires "that prisoners be served

9

'nutritionally adequate food that is prepared and served under conditions which do not present an immediate danger to the health and well being of the inmates who consume it' [and] under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension." Robles v. Coughlin, 725 F. 2d 12, 15 (2d Cir. 1983) (cited with approval in Lindsey v. O'Connor, 327 Fed. App'x 319, 321 (3d Cir. 2009)) (quoting Ramos v. Lamm, 639 F. 2d 559, 571 (10th Cir. 1980)). "[A] prisoner's diet must provide adequate nutrition, but prison officials cannot be held liable under the [constitutional standard] unless the prisoner shows both an objectively serious risk of harm and that the officials knew about it and could have prevented it but did not." Mays v. Springborn, 575 F. 3d 643, 648 (7th Cir. 2009) (citation omitted).[4]  Objectively, "[w]hether the deprivation of food falls below this [constitutional] threshold depends on the amount and duration of the deprivation." Berry v. Brady, 192 F. 3d 504, 507 (5th Cir. 1999) (quoting Talib v. Gilley, 138 F. 3d 211, 214 n.3 (5th Cir. 1998)).

   The allegations in this Amended Complaint do not satisfy the objective component of a conditions of confinement claim under §

---

[4] See also Trujillo v. Williams, 465 F. 3d 1210, 1227 (10th Cir. 2006); Thompson v. Gibson, 289 F. 3d 1218, 1222 (10th Cir. 2002); Shrader v. White, 761 F. 2d 975, 986 (4th Cir. 1985).

1983.[5]  Plaintiff alleges that there are no inspections by outside inspectors, the showers have fungus, and the diet does not satisfy the recommended daily allowance of the National Academy of Sciences.  Plaintiff does not specify how long he was confined at ACJF and, aside from fungus in the showers, Plaintiff does not describe the allegedly inadequate conditions.  Nor does Plaintiff describe the diet he was served at ACJF or otherwise plead facts showing that he suffered the effects of malnutrition.  Plaintiff's allegations are too conclusory to show that the deprivation of adequate nutrition had a sufficiently serious effect on Plaintiff's health to satisfy the objective component of the conditions of confinement claim under the <u>Iqbal</u> pleading standard.[6]  Plaintiff's allegations do not satisfy the objective component because the Amended Complaint does not show that he was subjected to genuine privation and hardship over an extended period of time.  <u>See</u> <u>Hutto v. Finney</u>, 437 U.S. 678, 686-87 (1978)

---

[5] Plaintiff asserts that the conditions of confinement do not comply with the New Jersey Administrative Code.  To the extent he bases his federal claims on violations of New Jersey regulations or laws, the claims fail under § 1983.  <u>See</u>, e.g., <u>Virginia v. Moore</u>, 553 U.S. 164, 178 (2008) ("But the arrest rules that the officers violated were those of state law alone, and . . . it is not the province of the Fourth Amendment to enforce state law").

[6] <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949 ("[T]he pleading standard Rule 8 announces does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation . . . .  Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement") (citations and internal quotation marks omitted).

("the length of confinement cannot be ignored in deciding whether the confinement meets constitutional standards. A filthy, overcrowded cell and a diet of 'grue' [providing 1000 calories per day] might be tolerable for a few days and intolerably cruel for weeks or months"); Hubbard, 538 F. 3d at 235 (triple celling of pretrial detainees and use of floor mattresses did not violate Due Process because the inmates "were not subjected to genuine privations and hardship over an extended period of time"); Piskanin v. Hammer, 269 Fed. App'x 159, 162-63 (3d Cir. 2008) (placement of pretrial detainee on suicide watch for brief six day period, during which time he could not contact counsel or file a habeas petition, did not amount to punishment prior to adjudication of guilt); Foreman v. Lowe, 261 Fed. App'x 401 (3d Cir. 2008) (detainee's confinement in maximum security did not violate due process). This Court will dismiss this claim without prejudice to the filing of a second and final amended complaint.[7]

B.  Access to Courts

Plaintiff complains that legal access is inadequate because it consists of submitting a written request for legal reference material to the social worker, who, despite her lack of legal

---

[7] If Plaintiff elects to file an amended complaint stating a due process claim, he should include specific facts regarding the duration and the conditions of confinement. See Pressley v. Blaine, 352 Fed. App'x 701 (3d Cir. 2009) (In determining whether a protected liberty interest exists, the court must consider: (1) the duration of the confinement; and (2) the conditions of that confinement in relation to other prison conditions).

training, attempts to find the material on Westlaw.  This Court construes these allegations as an attempt to assert a First Amendment access to courts claim.

Under the First and Fourteenth Amendments, inmates and detainees retain a right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 346 (1996); Monroe v. Beard, 536 F. 3d 198, 205 (3d Cir.), cert. denied, Stover v. Beard, 129 S. Ct. 1647 (2008).  "Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' - that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy' that may be awarded as recompense' for the lost claim other than in the present denial of access suit."  Monroe at 205 (quoting Christopher v. Harbury, 536 U.S. 403, 415 (2002)).  "The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'"  Monroe at 205-206 (quoting Christopher at 416-17).  For example, in Monroe, the Third Circuit affirmed dismissal of an access to the courts claim for failure to state a claim:

> In this case, the defendants confiscated all
> of the plaintiffs' . . . legal materials,
> including their legal briefs, transcripts,
> notes of testimony, exhibits, copies of
> reference books, treatises, journals, and
> personal handwritten notes.  In their initial

> pleadings, the plaintiffs' claim rested solely on the ground that the defendants confiscated their legal materials, contraband and non-contraband alike. That claim, on its face, was insufficient to state a claim under Harbury. So too were their subsequent amendments, which alleged that they lost the opportunity to pursue attacks of their convictions and civil rights claims but did not specify facts demonstrating that the claims were nonfrivolous. Nor did they maintain that they had no other remedy to compensate them for their lost claims. Even liberally construing their complaints as we must do for pro se litigants, they do not sufficiently allege that they have suffered actual injury.

Monroe, 536 F. 3d at 206 (citations and footnote omitted).

The Amended Complaint before this Court suffers the same pleading deficiencies as the complaints in Monroe. Plaintiff does not assert facts showing that, due to deficiencies in access to legal research materials, he lost a non-frivolous legal claim, and he does not assert facts showing he had no other remedy. Accordingly, this Court will dismiss the First Amendment access to courts claim. See Gibson v. Superintendent of N.J. Dept. of Law & Public Safety-Div. of State Police, 411 F. 3d 427, 444-45 (3d Cir. 2005) (dismissing denial of access claim for failure to specify causes of action lost).

C.  Personal Property

Plaintiff complains that officials charge a copying fee of $0.75 per page when copies should cost only five or seven cents per page. The Court construes these allegations a potential

claim of deprivation of property without due process of law. However, this due process property claim fails as a matter of law because the New Jersey Tort Claims Act ("NJTCA"), N.J. STAT. ANN. § 59:1-1 et seq., provides all the process that is due.  The NJTCA provides an adequate post-deprivation judicial remedy to persons, including inmates such as Plaintiff, who believe they were wrongfully deprived of property at the hands of prison or jail officials.  See Holman v. Hilton, 712 F.2d 854, 857 (3d Cir. 1983); Asquith v. Volunteers of America, 1 F. Supp.2d 405, 419 (D.N.J. 1998), aff'd 186 F.3d 407 (3d Cir. 1999).  Because the NJTCA is an available post-deprivation remedy providing all the process which is due, Plaintiff's due process claim regarding the loss of money for copying fails and will be dismissed with prejudice.  Id.

D.  Amendment of Complaint

This Court is dismissing with prejudice the due process claim for property loss, and Plaintiff will not be granted leave to file an amended complaint with regard to the copying fees. However, because Plaintiff may be able to cure the defects in the conditions of confinement claim and the access to courts claim by filing an amended complaint under 42 U.S.C. § 1983, this Court will grant Plaintiff 30 days to file same.[8]

---

[8] Once an amended complaint is filed, prior versions of the complaint no longer perform any function in the case and cannot
(continued...)

## V.  CONCLUSION

Based on the foregoing, this Court will dismiss the Amended Complaint, without prejudice to the filing of a second and final amended complaint.

                                                 /s/ Noel L. Hillman
                                                 **NOEL L. HILLMAN, U.S.D.J.**

Dated:  August 23 , 2011

At Camden, New Jersey

---

[8](...continued)
be utilized to cure defects in the amended complaint.  See 6 Wright, Miller & Kane, Federal Practice and Procedure:  Civil 2d § 1476 (1990) (footnotes omitted).  This means that Plaintiff should set forth all factual allegations as to each claim and defendant in the second amended complaint, if he elects to file same.